By the Court
(Zimmerman, J.).
The right of the state to bring an original action in quo warranto in this court was upheld when a demurrer to the petition was overruled in State, ex rel. Bettman, Atty. Genl., v. Miami Conservancy District, 125 Ohio St., 201, 180 N. E., 893. We see no good reason for departing from the views there- expressed.
A summary of the essential allegations of the petition is contained in the opinion cited. Suffice it to say here that the state claims to be the owner in fee simple of three described tracts of land in Mad River township, Montgomery county, Ohio, aggregating approximately 26.28 acres, which are asserted to be a part of the state-owned Miami and Erie Canal system;.that the Miami Conservancy District is wrongfully claiming ownership of said lands in violation of the rights of the state, and has leased the same for a substantial consideration to an individual who is wrongfully removing sand and gravel therefrom. Ouster is sought against the Miami Conservancy District from exercising the rights, privileges and franchises it claims and assumes in such lands.
*297 The answer of the Miami Conservancy District in substance denies that the state is the owner or entitled to the use and possession of any of the lands described in the petition, upon any basis, except “That part of said real estate upon which is located said state dam, the state levee abutting the same to the south thereof and connecting said state dam with the old feeder gates of the Mad river feeder of the Miami' and Erie canal and the land formerly occupied by said canal feeder and the feeder gates thereof, as shown on a map of the so-called ‘ Gaffney survey’ of all lands theretofore appropriated for canal purposes owned by the state of Ohio. ’ ’
The Conservancy District further alleges that it is the owner in fee simple by purchase of the part of the lands claimed by the state, and that this court has no original jurisdiction to hear and determine these proceedings.
By leave of court, and through agreement of the parties, the city of Dayton became a party defendant, filing an answer similar to that of the Conservancy District, claiming in addition to be the owner in fee simple by purchase of a part of the lands described in the petition, procured for the purpose of supplying water to the city of Dayton, and further claiming to have a valid lease with the Conservancy District through which the latter granted the city an easement across part of the lands described in the petition, for the construction and maintenance of a water conduit.
The state filed replies to the answers, in the nature of general denials.
It appearing that considerable evidence would be necessary to determine the rights of the parties, the court made an order appointing Frank I. Brown, as a special master commissioner, “to take such testimony and proofs as the plaintiff or defendant may desire, pertinent to the issues.” Said commissioner was directed to transcribe the testimony taken by him, but *298 without authority to report auy findings of fact or conclusions of law. It was also stipulated that the plaintiff first present its testimony and proofs.
By agreement of the parties, in the form of a stipulation, the sole issue in the case is reduced to the question of whether or not the state appropriated the lands described in the petition and made them a part of its canal system under Section 8 of the Canal Act of 1825 (23 Ohio Laws, 56, 57). So, as stated on page three of the plaintiff’s brief, “The only fact to be ascertained is whether the lands are in fact a portion of the Ohio canal system.”
The record is voluminous. The state offered a number of lay and expert witnesses and various exhibits in support of its contention that all of the lands described in the petition were in fact a part of the canal system. The purpose of this evidence was to prove that the dam constructed by the state across the Mad river, north of the city of Dayton, in 1827, and a subsequent dam or dams built at or near the same site, were for the express design of impounding the waters of Mad river; that a reservoir was created over the lands claimed, to insure an adequate water supply for navigation in the canal, and that thereby the lands in question were appropriated by the state for canal purposes. Different reasons for the impounding theory are advanced by plaintiff’s witnesses, the principal one being the existence of various levees in the vicinity, the effect of which would be to create a reservoir back of any dam present in the river.
The defendants proceeded on the theory that none of the dams were built or intended as. impounding dams, but, on the contrary, were constructed solely for the purpose of diversion — to raise the water in Mad river to a sufficient height to divert it through a feeder into the canal below. The evidence of the defendants, also composed of the testimony of lay and expert witnesses, and exhibits, tended to show that the flow of the water *299 in Mad river was at all times adequate to supply the canal with sufficient water for its proper operation, that is, three thousand feet per minute (Cooper v. Williams, 4 Ohio, 253, 285, 22 Am. Dec., 745), thus removing the necessity of a reservoir; that there is nothing in the construction of the present dam or in the adjacent physical surroundings to show that a reservoir was either created or intended; that the dam across Mad river caused only a slight backing up of the river water, insufficient under normal conditions to cause the river to overrun its banks; that the land claimed by the state to have constituted the reservoir was merely the land over which the Mad river flowed infrequently, at timés of excessively high water; that the surrounding levees were built as a protection against such overflow, and not for impounding water to form a reservoir ; that the various records, including the ‘ ‘ Gaffney survey” of 1889, do not show that the'state ever appropriated the claimed lands; that any such appropriation was never communicated to or recognized by the abutting property owners, as evidenced by lack of reservations in their deeds given from time to time, and that under Section 8 of the Canal Act of 1825 no appraisement of the particular lands involved, for benefits or damages, was ever conducted by the state.
The court being of opinion that this was a proper case for the appointment of a referee to report findings of fact and conclusions of law, Robert Guinther was named such referee. His report discloses a careful consideration of the case, including a study of the pleadings and the record, a visit to the city of Dayton to view the premises in question, the hearing of oral arguments of counsel, and an examination of the cases cited by counsel.
The findings of fact by the referee, with the supporting reasons therefor omitted, are as follows:
“I find, as a Conclusion of Fact, that the State did *300 not, prior to 1851, appropriate or take possession of the land in question.
“Fact 1. I find as a fact that the dams constructed in 1827 and 1828 were not thrust across the Mad River for the purpose of creating a resorvoir.
“Fact 2. The flooding of the lands above the dam was casual and not periodical.
“Fact 3. The owners of the lands above the dam apparently did not regard their land as taken from them.
“Fact 4. The State itself did not make a record to show that it regarded itself as the owner of the premises.”
The conclusions of law and the recommendations are brief, and are quoted in full, as follows:
‘ ‘ Conclusions ok Law.
“Having found as a Conclusion of Fact that the State did not, prior to 1851, take or appropriate the lands in question and thereby acquire the fee simple title thereto, the conclusion of law necessarily results therefrom that the State does not have the title thereto, which it claims in its petition. I, therefore, conclude that the State is the owner only of that part of the lands which is specifically described in the exceptions contained in the answer of the defendant, The Miami Conservancy District;, that it is not entitled to the remedy of quo warranto as against either of the defendants as to the lands described in the plaintiff’s petition; that because neither of the defendants asserts any right in the dam, feeder and the levee running from the dam to the feeder, being those parts specifically described in the answer of the defendant, The Miami Conservancy District, that the writ of quo warranto may not issue as against them.
‘ ‘ Recommendations.
“It is, therefore, my recommendation that the petition of the plaintiff be dismissed at its costs, and the writ prayed for be denied.”
*301 After an independent examination' of the record, we believe the preponderance of the evidence clearly sustains the report of the referee, and that his findings of fact and conclusions of law are correct.
The facts in this case, we think, bring it within the purview of Miller v. Wisenberger, 61 Ohio St., 561, 56 N. E., 454, where it was held, as stated in the syllabus:
“Where the possession and use of lands or streams in the construction of the Ohio canal system were merely incidental, constructive or indirect, and not of a character to fairly apprise both the officers of the state and the owners of the lands, that such lands or streams were appropriated and used in the construction of the canals, no fee to such lands or streams vested in the state. ” See, also, Smith v. State, 59 Ohio St., 278, 52 N. E., 638.
From what has been said it follows that the report of the referee is confirmed, the petition is dismissed, and the writ denied.

Writ denied.

Weygandt, C. J., Allen, Stephenson, Jones, Matthias and Bevis, JJ., concur.